ALEXANDER SIRES *vs.* WILLIAM NEWTON.

To entitle a plaintiff to an action of replevin, he must either have the actual possession or the right of reducing the property to possession, at the time of the unlawful taking.

Where A, in his own name but as the agent of B, purchases chattels for B, such chattels are the property of B, and a seizure of the same, under an execution against the property of A is wrongful, and no interest passes by virtue of a sale under such execution.

Error to Third Judicial District.

*Larrabee & White* for plaintiff in error.

*B. F. Dennison* for defendant in error.

Opinion by LEWIS, Justice.

Replevin of a billiard table. Case was tried by the court, without a jury, and the following findings of facts filed, to wit:

1. The plaintiff in October, 1870, was keeping a saloon in Port Townsend, W. T.

2. That he desired to purchase a pigeon-hole billiard table. In order to make the purchase, it was necessary to send an order to San Francisco, to Phelan & Co., who manufactured such tables.

3. The letter containing the order was written in October, 1870, by George Hansel, at the request of plaintiff.

4. After the letter was written, it being a simple order to send the table, with a promise to pay on the receipt thereof, it was read over by Mr. Hansel to plaintiff and his brother, David Sires.

5. Plaintiff being a stranger in San Francisco, and unknown to Phelan & Co., and David Sires *being known* to the San Francisco company, it was thought best *to have David Sires sign the letter;* and his name was accordingly signed to the letter by Mr. Hansel, with David Sires' permission, at the request of plaintiff.

6. In about a month the table came, in boxes, *directed* to David Sires.

7. The boxes containing the table, before they went into the possession of either David Sires or plaintiff, were seized on execution, on a judgment obtained *against David Sires,* as the *property of David Sires,* by the sheriff of Jefferson county, W. T.

8. The table never came into the possession of either plaintiff or David Sires.

9. The table was sold on said execution by the sheriff, and purchased by Waterman & Katz, the judgment creditors of David Sires, and subsequently sold by said Waterman & Katz to defendant Newton; it was a condition of the last sale, that if plaintiff succeeded in this suit, Newton was not to pay for the table.

Upon the facts so found, the district court found as conclusion of law that, at the time of the levy, the billiard table was the property of the said David Sires, and hence liable to levy and sale upon said execution.

Judgment was rendered for the defendant, to recover which, the plaintiff hath prosecuted this writ of error.

The material question for the consideration of this court is, whether at the time of the levy and sale by the sheriff, the table in question was the property of the plaintiff or of David Sires; for if it was the plaintiff's property, it was not subject to levy and sale upon execution against *David Sires,* and hence the sheriff was a trespasser; if so, this action will lie.

It seems settled that replevin will lie in favor of any person whose goods are taken by a trespasser. The plaintiff, however, must have either the actual possession, or the right of *reducing the property to his possession at the time of the tortious taking. Clark vs. Skinner,* 20 John., 466. And this is in substance the provisions of our statute. Civ. Practice act, Sec. 141.

There can be no doubt but that this table was purchased by David Sires, *in his own name,* upon his own credit. That Phelan & Co., in the sale to him, knew him only as principal, and that he was responsible to them for the price and value of the table. That at the time of the sale, Phelan & Co. did not know, or have reason to believe, that he was acting as the agent of any person.

Yet, on the facts found, it is clear that David Sires did not purchase the table for himself; but he permitted his name and credit to be used for the purpose of aiding his brother, Alexander Sires, in making the purchase. In fact, it was his intention to aid thus far, as the agent of his brother in making the purchase. Has he, therefore, in this transaction made himself the principal, and the property his? Or was the property in law that of Alexander Sires?

To determine this question two points must necessarily be determined, to-wit:

Is parol evidence admissible to show that this written contract for the purchase of the table, was in fact made by *David Sires* as the agent of Alexander Sires?

Could Phelan & Co. have compelled Alexander Sires to pay for the same, his name nowhere being known or used in the transaction?

The rule of law on the first point seems to be this:

"Parol evidence can never be heard for the purpose of *discharging* the agent, but may always be heard for the purpose of *charging* the principal."

"Parol evidence that the person who signed as principal

was in reality agent, ought *not* to be excluded, when the purpose for which it is offered is that of charging the principal with the contract." Smith's L. Cases, vol. 3, 369. *Ford vs. Williams*, 21 Howard, 287.

Upon the other proposition, the leading case is that of *Thompson vs. Davenport*, 9 B. & C., 78, which is reported at length in Smith's leading cases. The rule is there laid down by Lord Tenterden thus:

"If a person sells goods (supposing that he is dealing with a principal), but afterwards discovers that the person with whom he has been dealing is not the principal in the transaction, but the agent for a third person, though he may in the mean time *have debited the agent* with it, he may afterward recover the amount from the real principal; subject to this qualification, that the state of the account between the principal and agent is not allowed to prejudice the principal." 2 Smith's L. Cases, 362.

In the same case, the rule is thus stated by Littledale, J.:

"The general principle of law is, that the seller shall have his remedy against the principal, rather than against any other person. When goods are bought by an agent, who does not at the time disclose that he is acting as agent, the vendor, although *he has debited* the agent, may, upon discovering the principal, resort to him for payment." 2 Smith's L. cases, 364.

The foregoing questions are both freely discussed by the Supreme Court of the United States, in an opinion by Justice Grier, thus:

"The contract of the agent is the contract of the principal, and he may *sue or be sued*, thereon, though *not named therein*, and notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled, that the principal may show, that the agent who made the contract in his own name was acting for him; this proof does not contradict the writing; it only explains the transaction." *Ford vs. Williams*, 21 Howard, 287.

To the same effect are following authorities: *N. J. Steam*

*Nav. Co. vs. Merchants' Bank,* 6 How., 381; *Tainter vs. Pendergast,* 3 Hill, 72; 7 Cush., 242; 4 Cal., 355.

This rule is, however, not to be applied to commercial paper. 10 Wend., 277, citing 16 Mass., 54; 6 Bin., 228.

Conceding the law to be as held by the foregoing authorities, there is no doubt but that Phelan & Co. could sue for and recover from Alexander Sires the price of the table; it is also true that they might elect to look to David Sires alone for payment and he would not be permitted to set up his agency for the purpose of discharging himself. Neither is there any question, but that Alexander Sires could have recovered the table from David Sires, on showing the agency and paying him whatever charges · he had against him.

· The act of David Sires, as agent, was the act of Alexander Sires, the principal, and the table in question was, at the time of the levy and sale, the property of Alexander Sires. David Sires had no property whatever in the table; he had nothing more than a lien thereon for his charges. This lien was personal, not transferable, nor subject to levy and sale.

The act of the sheriff, therefore, as against plaintiff, in seizing the property, was wrongful, and the vendors of defendant took no interest in the property by reason of such levy and sale.

We are, therefore, of the opinion that the judgment in this case should be for the plaintiff, Alexander Sires.

It is ordered, therefore, that he have judgment in his favor in this court.